[Crim No. 3232. Second Appellate District, Division Two.—October 19, 1939.]

THE PEOPLE, Respondent, v. MARGARET B. CONNELL SCOBEY, Appellant.

Caroline R. Kellogg, Paul Barksdale D'Orr and Thomas A. Reynolds for Appellant.

Earl Warren, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

MOORE, P. J.—Defendant appeals from convictions upon thirty-three separate felonies—eleven counts for grand theft and twenty-two for forgery. She is past seventy-two years of age; has practiced law in California since 1920, having formerly resided in Utah and in Texas.

The offenses charged against her grew out of legal matters handled by her for one Lucy DuBois and one Inez Goodman, two of her clients. She became attorney for each of these ladies in 1933, and continued to act for both until 1938. The reporter's transcript of her trial comprises many volumes. There is no intimation that the evidence was insufficient to warrant the convictions; no assignments of

error upon the admissibility of evidence; no complaint as to the conduct of the district attorney. The sole basis of this appeal is the contention that the jury were not properly directed. The asserted errors consisted of two kinds, namely: first, failure of the court to instruct properly with respect to reasonable doubt; second, failure of the court to instruct properly with reference to the value of "character" as evidence in the case.

 (1) With reference to reasonable doubt, the jury were fully and amply instructed. While it was unnecessary to do more than read section 1096 of the Penal Code (sec. 1096a, Pen. Code), the jury were advised that if the evidence is susceptible of two contrary interpretations, both reasonable, they must adopt that interpretation proving innocence; that she is presumed innocent until guilt is proved and if a reasonable doubt exists, she is entitled to acquittal; that this rule governs even though an attorney's duty demands a greater degree of care than is required of the ordinary individual; that they are not bound to decide in conformity with the declarations of any number of witnesses which do not produce conviction as against a presumption or other satisfying evidence; that every count is an alleged distinct offense; that the finding upon one count shall have no influence in considering another count. Following the instruction of "reasonable doubt" (sec. 1096, Pen. Code)— the only requisite instruction upon that subject (sec. 1096a, Pen. Code)—the jury were finally told that the burden of proof is upon the prosecution to prove every material allegation and its failure to do so to a moral certainty and beyond a reasonable doubt warranted a verdict of not guilty. Also, the court defined with meticulous care the crimes of forgery, theft, larceny, trick and device, and distinguished those several crimes.

 All of the special instructions requested by the appellant were either varying forms of the statements of the law, as presented in the instructions given, and therefore needless, or they were mere arguments and, therefore, out of place. For illustration, after the crime of forgery had been succinctly stated by the court, what could be the virtue of following such definition with a statement that if the victim of the forgery gave appellant authority to write her name, the jury should acquit? Likewise, after such definitions, it would be absurd to instruct the jury to acquit the

defendant if they believed the victim herself signed the instruments. Moreover, after definitions of forgery and the instructions that the defendant could not be convicted unless the jury be persuaded beyond a reasonable doubt, it were supererogation to say that the jury cannot convict for forgery unless they believe beyond a reasonable doubt that the defendant wrote the victim's signature with intent to defraud. Indeed, not only would that instruction have been superfluous but it ignored that type of forgery committed by uttering a forged instrument.

The instructions given have oftentimes, in substance, been approved following attacks similar to those here made. (*People* v. *Jackson,* 97 Cal. App. 692 [276 Pac. 156] ; *People* v. *Baker,* 94 Cal. App. 628 [271 Pac. 765] ; *People* v. *Galloway,* 104 Cal. App. 422 [286 Pac. 476].) In the Galloway case, it was held, after refusal of a similar instruction upon "reasonable doubt" that the reading of section 1096 of the Penal Code was sufficient. In the Baker case, this court held that it is a rule of long standing that, having once given an instruction "it is not error to refuse to again state the law in the phraseology requested by the defendant".

■ (2) Defendant's contentions with reference to the rejection of her proposed instructions as to the manner of weighing evidence of her good character are likewise unavailing. The instructions as read "correctly and without conflict stated the law". (*People* v. *Von Perhacs,* 20 Cal. App. 48 [127 Pac. 1048] ; *People* v. *Ridgeway,* 89 Cal. App. 615 [265 Pac. 349] ; *People* v. *Navarette,* 21 Cal. App. (2d) 598 [69 Pac. (2d) 449].) The instruction approved in the Navarette case was less favorable than that criticized by appellant here.

■ (3) Defendant's hypothesis that her guilt depended upon her "intent" is true as in all cases of the misappropriation of entrusted funds or of the misuse of granted powers. But the only known means of ascertaining the undeclared intent of any actor is by our knowledge of human behavior. We cannot assume that the making of such determination is a "noble guess"; but rather, that it is derived in the intelligence and conscience of the jury. It is known to any qualified juror that, while intent is the fruitage of desire and is begotten of the wish, yet it is the motor of the will. The fact that it is difficult for any group by the

processes of ratiocination to ascertain intent, notwithstanding the confusion of innumerable, heterogeneous acts, does not suspend the judicial doctrine which requires such a finding by the constituted tribunal. The details of the many years of faithfulness of this truant trustee having been dissected in the presence of, and inspected by, a jury impaneled and sworn, we are required to accept the decision solemnly returned in their verdict.

A reply brief by the hand of the unfortunate prisoner is a diatribe assailing the conclusions of the jury and attempting to argue the evidence. The practice and the doctrine that the findings of the jury when free from prejudicial error, constitute the "justice" a litigant must accept, is too well settled for discussion. While her plea engenders our sympathy, it cast no new light upon the problem presented.

The judgment is affirmed.

Wood, J., and McComb, J., concurred in the judgment.